UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:14-CV-133-FL

| | | |
|---|---|---|
| TIMOTHY P. DANEHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPLY IN FURTHER SUPPORT OF** |
| v. | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| TIME WARNER CABLE ENTERPRISES | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Time Warner Cable Enterprises LLC ("Defendant" or "TWC"), pursuant to

Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7.1(f), submits this Reply

in further support of its Motion for Summary Judgment.

In his Memorandum in Opposition, Danehy asserts several novel arguments (and

analogies) that would effectively require the Court to implausibly expand the Telephone

Consumer Protection Act ("TCPA") to outlaw use of prerecorded messages altogether.  Danehy

twists the framework of the TCPA to give the statutorily defined terms "called party," "prior

express consent," and "automatic telephone dialing system" no effect.  He requests that the Court

increase the scope of the TCPA beyond nonconsensual telemarketing and advertising

communications.  Danehy's sweeping legal conclusions do not create any issues of material fact.

TWC is entitled to summary judgment on his claims.

I.      **Danehy Lacks Standing Under the TCPA.**

Danehy argues for an expansive theory of standing under the TCPA that would confer a

private right of action on anyone who received a prerecorded message.  He concedes he was not

the intended recipient of the calls, but likens himself to a bystander struck by an errant punch

who brings a tort claim for damages. Danehy, of course, in this action seeks only *statutory* damages under the TCPA. As explained in Defendant's opening Memorandum, the plain language of Section 227(b) of the TCPA provides a cause of action to the "called party" and not merely the "recipient" of the call. 47 U.S.C. § 227(b)(1)(A)(iii). An unintended recipient cannot provide prior express consent and therefore cannot be a "called party" under the TCPA. *Cellco P'ship v. Dealers Warranty, LLC*, 2010 U.S. Dist. LEXIS 106719, at *34 (D.N.J. Oct. 5, 2010) ("Under such an interpretation, the exception contemplated by Congress in § 227(b)(1)(A) for calls made with 'the prior express consent of the called party' would be rendered meaningless.").

Some courts have held to the contrary. However, none of the cases allowing an unintended recipient to proceed with a claim under the TCPA presents an analogous factual scenario where the calls were not debt-collection attempts nor commercial solicitations and were directed to a particular customer of the defendant who had requested the calls. Indeed, the only case cited by Danehy in support of his standing argument, *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012), involved calls made by a debt collector using a predictive dialer. Here, it is uncontroverted that TWC was not attempting to collect a debt and did not use a predicative dialer in attempting to schedule a service visit requested by its customer. Lawson Decl. ¶ 8; Sprio Decl. ¶ 6.

Danehy is not a "called party" within the meaning of the TCPA, and TWC is entitled to summary judgment on this basis.

## II. TWC Had the "Prior Express Consent" of the "Called Party."

Danehy does not dispute that TWC had a good faith basis in believing its customer consented to being called at the number eventually acquired by Danehy. TWC, therefore, had the requisite "prior express consent" of the "called party" (i.e., its customer) under the TCPA.

*See Chyba v. First Fin. Asset Mgmt., Inc.*, 2013 U.S. Dist. LEXIS 165276, at *32-33 (S.D. Cal. Nov. 20, 2013).

In opposition, Danehy queries whether TWC's Customer could give TWC consent to swim in his pool or access his bank account. These analogies completely miss the point. TWC's Customer gave TWC his consent to contact *him* at the number eventually acquired by Danehy. The TCPA was enacted to remedy "intrusive nuisance calls" and "certain practices invasive of privacy." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012). The TCPA was not enacted to hold entities strictly liable for calls they believed in good faith were being made to a consenting individual. A holding to the contrary would foment "gotcha" lawsuits where, for example, a putative plaintiff might purchase six prepaid cell phones, take them all to his work, hope to receive errant calls, and not inform the caller it was not calling the intended recipient.

## III.    Danehy's Cell Phone Was Not Contacted by an ATDS.

Danehy apparently believes that a dialer that has any non-manual features constitutes an "automatic telephonic dialing system" ("ATDS") regulated by the TCPA. However, an ATDS is statutorily defined as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C.§ 227(a)(1). Absent the capacity to store or produce telephone numbers with a number generator, automated telephone technology is not an ATDS. *Marks v. Crunch San Diego, LLC*, 2014 U.S. Dist. LEXIS 152923, at *9-10 (S.D. Ca. Oct. 23, 2014); *De Los Santos v. Millward Brown, Inc.*, 2014 U.S. Dist. LEXIS 88711, at *20 (S.D. Fla. June 30, 2014); *Dominguez v. Yahoo, Inc.*, 2014 U.S. Dist. LEXIS 36542, at *17 (E.D. Pa. Mar. 20, 2014); *Gragg v. Orange Cab Comp., Inc.*, 995 F. Supp. 2d, 1189, 1192-1196 (W.D. Wash. Feb. 7, 2014).

- 3 -

Danehy does not attempt to contradict the sworn statement of SkyCreek's Account Manager that SkyCreek's systems have never had the capacity to store or produce telephone numbers using a random or sequential number generator or to call telephone numbers without human intervention. Lawson Decl. ¶ 6. Instead, Danehey (without citation to authority) twists the statutory definition of an ATDS to include any device capable of merely storing telephone numbers. Danehy effectively rewrites the definition of an ATDS to include equipment with the capacity: "(A) to store *telephone numbers* or produce telephone numbers ~~to be called,~~ using a random or sequential number generator; and (B) to dial such numbers." Danehy's definition of an ATDS potentially would subject all smartphone users to the TCPA, an outcome courts have deemed "absurd." *Marks*, 2014 U.S. Dist. LEXIS 152923, at *8; *Gragg*, 2014 U.S. Dist. LEXIS 16648, at *8.

There is no genuine issue of material fact that SkyCreek did not use an ATDS when it mistakenly called Danehy's cell phone.

## IV.   The Calls Were Not for Advertising, Telemarketing, or Solicitation Purposes and Fall Outside the Scope of the TCPA.

In its opening Memorandum, TWC noted that because the calls were not made for advertising or telemarketing purposes they fall outside of the scope of the TCPA and are not actionable. *See Ryabyshchuck v. Citibank (S.D.), N.A.*, 2012 U.S. Dist. LEXIS 156176, at *7 (S.D. Cal. Oct. 30, 2012); *Ibey v. Taco Bell Corp.*, 2012 U.S. Dist. LEXIS 91030, at *8 (S.D. Cal. June 18, 2012). TWC also noted that Danehy's Section 227(c) claim—alleging violations of the "Do Not Call" regulations—fails because the calls were not "telephone solicitations." *See Friedman v. Torchmark Corp.*, 2013 U.S. Dist. LEXIS 114321, at *17-19 (S.D. Cal. Aug. 13, 2013).

Danehy's only response to either argument is that TWC's intent in making the calls "was to have the recipient _invest_ his personal time in being at home to receive the _service_. TWC was soliciting the called parties' [sic] time so that the service could be performed efficiently." Pl.'s Mem. 10 (emphasis in original). That Danehy's cell phone carrier apparently recycled TWC Customer's phone number, causing Danehy to receive calls that TWC's Customer consented to receive, does not change the fact that these calls were solicited by TWC's Customer and are individualized messages, not advertisements or solicitations. Nor does it make the calls "telephone solicitations" under the "Do Not Call" regulations. Consequently, Danehy's Section 227(b) and 227(c) claims should be dismissed.

## CONCLUSION

For the reasons set forth here and in TWC's opening Memorandum, TWC's Motion for Summary Judgment should be granted and Danehy's claims should be dismissed with prejudice.

This the 18th day of November 2014.

/s/ D.J. O'Brien III
D.J. O'Brien III
dobrien@brookspierce.com
N.C. State Bar No. 35481
BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, LLP
1600 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, NC 27601
Tel. (919) 839-0300
Fax (919) 839-0304

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that he electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and that he served a copy of the foregoing document on the Plaintiff in this action by placing the same in United States Mail, prepaid postage affixed, addressed as follows:

> Timothy P. Danehy
> P.O. Box 301
> Kittrell, NC 27544
> *Pro Se Plaintiff*

This the 18th day of November 2014.

> /s/ D.J. O'Brien III
> D.J. O'Brien III